IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOAN MAERTIN, et al., | HONORABLE JEROME B. SIMANDLE |
| Plaintiffs, | CIVIL NO. 01-5321 (JBS) |
| v. | |
| ARMSTRONG WORLD INDUSTRIES, INC., et al., | **MEMORANDUM OPINION** |
| Defendants. | |

**SIMANDLE**, District Judge:

This matter is before the Court upon the motions for summary judgment by Defendants Certain Underwriters at Lloyd's, London, including Peter Cameron-Webb, and London Market Insurance Companies ("London Market Insurers" or "London Market") which has been joined by Compagnie Europeenne D'Assurances Industrielles, SA ("CEAI"). Because neither London Market nor CEAI will be exposed to liability under any of the allocation schemes proposed by the insured or the primary carrier under New Jersey law, the Court will dismiss the complaint as to those Defendants. However, the dismissal will be made without prejudice to Plaintiffs' rights to reinstitute suit against London Market and CEAI in the unlikely event that the final allocation made by the Court exposes those parties to liability.

I.   BACKGROUND

The Court will briefly summarize the facts relevant to its determination here, as the parties by now are intimately familiar

with the factual and procedural background.

Armstrong first purchased primary coverage from Liberty Mutual Insurance Group ("Liberty") beginning in January 1973. The Liberty policies in effect from January 1, 1973 to January 1, 1986 were "occurrence policies" – "[e]ach policy had a $1,000,000 per occurrence limit for personal injury." Plaintiffs do not dispute that the Liberty policies in effect from January 1, 1973 to January 1, 1977 have previously been exhausted.

Additionally, Armstrong obtained excess coverage. Among those are six policies subscribed by London Market Insurers and CEAI, each of which sits in excess of a $1 million primary policy.[1] Those excess policies are:

| **Policy Number** | **Policy Period** |
|---|---|
| 881/UJL 0035 | 1/1/77 to 1/1/80 |
| 881/UJL 0116 | 1/1/77 to 1/1/78 |
| 881/UJL 0036 | 1/1/77 to 1/1/78 |
| 881/UKL 0120 | 1/1/78 to 1/1/79 |
| 881/UKL 0121 | 1/1/78 to 1/1/79 |
| 551/UNA 0027 | 1/1/81 to 1/1/82 |

During the pendency of this matter, Liberty Mutual, the primary carrier for Armstrong, agreed to a partial settlement with Plaintiffs in the amount of $3,000,000. Plaintiffs maintain that the Liberty settlement did not affect their rights to collect additional payment from Liberty Mutual in the event a

---

[1] By Consent Order dated August 12, 2005, the caption in this matter was amended to include CEAI as a separate Defendant from London Market. By letter dated October 25, 2005, CEAI joined in London Market's motion for summary judgment.

Court were to find the "excess carriers" were not responsible for any portion of the remaining $4,000,000. In addition to London Market and CEAI, the "excess carriers" are CGU/One Beacon Group, Central National Insurance Company, and International Insurance Company.

## II.  DISCUSSION

New Jersey law applies to this dispute.[2] Under New Jersey law, "when progressive indivisible injury or damage results from exposure to injurious conditions for which civil liability may be imposed, courts may reasonably treat the progressive injury or damage as an occurrence within each of the years of a [comprehensive general liability] policy.  That is the continuous-trigger theory for activating the insurers' obligation to respond under the policies." Owens-Illinois, Inc. v. United Insur. Co., 138 N.J. 437, 479 (N.J. 1994).  "Because multiple policies of insurance are triggered under the continuous-trigger theory . . . a fair method of allocation appears to be one that is related to both the time and the degree of risk assumed." Id.

In Carter-Wallace v. Admiral Insurance Co., 154 N.J. 312,

---

[2] This Court held that New Jersey law applies to this dispute in an Opinion and Order dated June 16, 2005.  On March 30, 2006, the Court granted Liberty's motion to amend/correct the Court's June 16th Opinion and Order, and certified the choice-of-law issue to the United States Court of Appeals for the Third Circuit.  By Order dated June 6, 2006, the Court of Appeals denied Liberty's request for permission to appeal under 28 U.S.C. 1292(b).

317 (N.J. 1998), a manufacturer of pharmaceutical and consumer products sought defense reimbursement and indemnity from over twenty insurers for costs it incurred for cleanup of a contaminated waste disposal site. The plaintiff ultimately settled with all but one of its insurers, that insurer having provided to the plaintiff "a second-layer excess policy," the amount of which was in excess of the "underlying primary and first-layer excess coverage." Id. at 319.

In determining the proper allocation, the court in Carter-Wallace relied on Judge Brotman's "well-reasoned opinion" in Chemical Leaman Tank Lines, Inc. v. Aetna Casualty & Surety Co., 978 F. Supp. 589 (D.N.J. 1997), which "rejected the theory of horizontal exhaustion by layer, and 'directed apportionment of damages among policy years without reference to the layering of policies in the triggered years,'" noting that within any given year, each layer of excess coverage must be depleted before the next level is pierced.

In other words, the court in Chemical Leaman, "having reached a figure for each year, . . . adopted a method that vertically allocated each policy in effect for that year, beginning with the primary policy and proceeding upward through each succeeding excess layer." Id. at 326. Thus, for example,

> [a]ssume that primary coverage for one year was
> $100,000, first-level excess insurance totaled
> $200,000, and second-level excess coverage was
> $450,000. If the loss allocated to that specific year

4

>     was $325,000, the primary insurer would pay $100,000,
>     the first-level excess policy would be $200,000, and
>     the second-level excess policy would pay $25,000.

Id. at 326-27.

Applying that formulation here, Plaintiffs and Liberty Mutual have each submitted proposed allocation models. Under none of those plans, though, is London Market or CEAI exposed to liability.[3]

Specifically, under Plaintiffs' initial proposal, the excess policies are not triggered until 1982; as London Market and CEAI only subscribed policies covering the years 1977-1982, however, they obviously are not exposed to liability during that period. (See Pl. Ex. A.) Similarly, under Plaintiffs' revised allocation model, as well as the one proposed by Liberty Mutual (which is

---

[3] To the extent that Defendants International Insurance Company and Cravens, Dargan Co., Pacific Coast, as managing general agent of Central National Insurance Co. of Omaha, object to the allocation models set forth by Plaintiffs and by Liberty Mutual, their objections serve only to support the Court's conclusion that London Market will not be exposed to liability under any scenario. Specifically, Certain Defendants argue that if insurance in excess of the $41 million total coverage were available to Armstrong covering the period from 1970 - 1976, Armstrong (and thereby the Maertin Plaintiffs) must be responsible for a portion of the loss attributable to those years. Therefore, Certain Defendants contend, Liberty Mutual's allocation analysis under New Jersey law is flawed because it fails to apportion some part of the $7 million settlement amount to the "purportedly exhausted policy years." (Certain Defs. Br. at 14.) Under that scenario, however, Liberty Mutual's share for the years 1977-82 would be less, not more, than the $1 million in primary coverage available. Accordingly, Certain Defendants' objections do not call into question the Court's limited holding here.

virtually identical to Plaintiffs'), the excess carriers are not exposed to liability before 1982.  (<u>See</u> Pl. Reply Ex. A; Lib. Mutual Ex. H.)  And as already mentioned, the excess policies subscribed by London Market and CEAI only covered through the end of 1981.  Accordingly, neither London Market nor CEAI will be exposed to liability under this allocation plan either.

For these reasons, the Court will dismiss the complaint as to London Market and CEAI without prejudice to Plaintiffs' rights to reinstitute suit in the unforseen event that the final allocation made by the Court exposes either of those parties to liability.

### III. CONCLUSION

For the foregoing reasons, the Court will dismiss the Complaint as to London Market and CEAI without prejudice.


**July 19, 2006**                               **s/ Jerome B. Simandle**
Date                                            JEROME B. SIMANDLE
                                                U.S. District Judge

6